## STATE OF TENNESSEE ex rel. MRS. E. O. SMITH v. CITY OF NASHVILLE, etc., et al. —364 S.W. (2d) 106.

Middle Section at Nashville.  July 27, 1962.

Certiorari Denied by Supreme Court December 7, 1962.

E. C. Yokley, Nashville, for complainant.

Frank S. King, Jr., Nashville, for defendants.

HUMPHREYS, J. This is an appeal by the City of Nashville and the Board of Zoning Appeals from a decree of the Chancery Court of Davidson County sustaining the petition of Mrs. E. O. Smith for writs of certiorari and supersedeas, and ordering said Board to issue four building permits and certificates of occupancy for the construction of facilities on four lots, in accordance with Mrs. Smith's applications therefor.

The facts of this case are succinctly stated in the reply brief of complainant, Mrs. E. O. Smith, as follows:

"The complainant, Mrs. E. O. Smith, first applied for occupancy permits for four (4) trailers on her two vacant lots adjacent to her home on April 2, 1959, which were issued to her. (B of E, p. 6, 9). She immediately contracted for the installation of water and sewer connections on said lots and incurred expenses in this connection in the sum of $940.00. (B of E., p. 9 and 10). Thereafter, on April 13, 1959, after this obligation was incurred, her permits were revoked by the defendant, J. Douglas Roach, the Chief Building Inspector for the City of Nashville. (B of E. p. 10).

"Thereafter new applications for permits were filed on April 24, 1959, which were denied on grounds of not a principal building and insufficient lot area. (Board of Appeals transcript, p. 5.). On April 30, 1959, the complainant appealed the action of the defendant Roach in denying said permits to the defendant Board of Zoning appeals.

"The matter came on to be heard before the Board of Zoning Appeals on May 25th, 1959. Some days prior to the hearing before the defendant board, it developed that due to a projection of the home of the complainant at 1114 East Cahal Avenue over and onto her adjacent lot for a few feet, it would be necessary to realign the placement of the proposed trailers on the vacant lots adjacent to her home lot by utilizing a portion of the lot on which the home of the complainant was situated, and amended plans, prepared by the technical staff of the defendant board were, by approval of the board, permitted to be substituted for the original plans. (Board transcript, p. 27.). No objection was made, at the hearing, to

the substitution of the amended plan, as prepared by the technical staff of the defendant board. No evidence was presented, at the hearing of May 25th, and no contentions were made, that reflected upon the accuracy or suitability of this amended plan, as submitted. * * *

"At the conclusion of the hearing before the defendant board on May 25th, the defendant board, instead of ruling on the appeal of the complainant, deferred action on the matter until the next monthly meeting of the Board. (Board transcript. pp. 42, 43.).

"On June 29th, at its next meeting, the defendant board again deferred action on the matter of complainant's appeal. (Board transcript, p. 45.). On June 30th, the following day, the defendant board again considered the complainant's appeals, whereupon the defendant board adopted a resolution denying the relief sought by the complainant on the grounds that it had no jurisdiction, and affirmed the action of the defendant Roach in denying the requested permits. (Board transcript, pp. 46-50.).

"Following this action by the defendant board, the complainant instituted proceedings in the Chancery Court of Davidson County, Tennessee, as has been detailed in the preceding portion of this reply brief under the heading 'Statement of the Case'."

Upon the trial of the case in the Chancery Court it developed that complainant proposed to construct facilities upon each of said four lots for use by trailers, and to rent the use of these lots and facilities from time to time

to such transient and other trailer occupiers as might require them.

It was further developed at the Chancery hearing by a witness, W. A. Pitts, who had been secretary and director of planning for the Planning Commission and the Zoning Board of the City of Nashville for approximately eleven years, that, while still in the employ of the Planning Commission and Board of Zoning Appeals he had directed and supervised the redivision of the three lots of complainant into the four lots, which he stated was done in accordance with the accepted and established administrative procedure of the Planning Commission and the Board of Zoning Appeals, and that in his opinion the lots complied in size, shape, location and otherwise, with the requirements of the zoning ordinance.

Evidently persuaded by this testimony by Pitts, the Chancellor ordered the Board to issue the building and occupancy permits.

In this Court, as before the Board and the Chancellor, complainant relies on certain definitions of words found in Section 15 of the Zoning Regulations as authorizing the construction of the four trailer rental sites in a Residence A District, while defendants maintain the redivision of the three lots so as to result in the arrangement described, is contrary to the ordinance and the State Zoning law, and make the further contention that since the City of Nashville adopted an ordinance which prohibits the location of trailers in Residence A Districts while complainant's appeal was pending before the Board of Zoning Appeals, the permits sought cannot now be issued.

Mrs. Smith's contention may be briefly stated thus: that Section 2 of Article 1 of the Zoning Regulations, which establishes Residence A Districts, authorizes residential use and occupancy for a detached "dwelling" for up to two families or two housekeeping units. Then turning to Section 15 of Article 1 of the Regulations she points out that the word "dwelling" is defined as "any house or building or portion thereof which is occupied in whole or in part as the home, residence, or sleeping place of one of more persons either permanently or transiently." Then, she points out that the word "building" is defined in Subdivision A of Section 15 as follows: "The word 'building' includes the word 'structure' and shall include fences, tents, and lunch wagons, dining cars, camp cars, or other structures on wheels or other supports and used for business or living purposes."

By this approach complainant comes up with a construction of the regulations which entitles her to construct rental sites for trailers in a Residence A District.

While in a case for that purpose we might be constrained to agree that this construction of the Residence A District regulation and the definitions involved might warrant the location of a trailer used for residential purposes in a Residence A District, we do not think it follows from this that a trailer camp or park can be constructed in a purely residential district and operated therein as a commercial enterprise as Mrs. Smith proposes.

It appears from a reading of all of the zoning regulations, which purport to provide a comprehensive and all inclusive arrangement for the use and occupancy of the territory comprising the City of Nashville, that Residence

A Districts, which are the highest, best and most restricted districts provided for by the regulations, do not contemplate or permit any commercial activities therein except the operation of a boarding house of limited size under Subdivision 3, and railroad rights of way under Subdivision 9, and we do not think this primary object can be thwarted by reference to definitions in other parts of the act.

Our construction of the zoning regulations to this effect is sustained by Section 8 of the Regulations which prescribes the use of land in ''Commercial A districts.'' Section 1A of this section provides for the operation of trailer parks in such commercial districts. The necessary and inescapable conclusion from the fact that trailer parks are expressly provided for and authorized in Section 8 defining and providing for Commercial A Districts, and this is the first mention of such activity, is that such a commercial activity cannot be carried on in the residence districts. See City of New Orleans v. Louviere, La. App., 52 So. (2d) 751.

While zoning ordinances are to be strictly construed in favor of property owners (State ex rel. Morris v. City of Nashville, 207 Tenn. 672, 343 S. W. (2d) 847), they must be applied so as to achieve their obvious and intended purposes. By the limited approach to the construction of these regulations resorted to by complainant it could as well be argued that since a ''dwelling'' is defined as a ''building'', used in part for sleeping, and a ''building'' is defined as a ''fence, tent, lunchwagon, dining car or camp car'', a person could maintain a lunchwagon, dining car or camp car in a Residence A District so long as a part of it was used for the sleeping place for one or more persons.

■ It is our opinion that while the word "building" is defined to include fences, tents, lunchwagons, dining cars, camp cars, etc., the word must necessarily be so defined only when the context of the regulation in which it is used will permit of such a definition. In other words, we do not think that a regulation providing for a purely residential, non-commercial use and occupancy can be broadened so as to defeat its purpose by resort to definitions which are clearly not intended to apply.

■ We are of opinion appellant's contention that the permits could not be issued because of the adoption of a city ordinance while the appeals were pending must be denied on authority of State ex rel. Morris v. City of Nashville, supra.

We do not reach the subdivision question, our action herein making this unnecessary.

The first assignment of error is sustained and an order will be entered setting aside the decree and dismissing Mrs. Smith's suit.

Shriver and Chattin, JJ., concurring.